# EXHIBIT 1

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release (the "Agreement") is entered into by and between Defendant, Marada Industries, Inc. d/b/a Cosma Body Assembly Michigan (hereinafter, "Defendant") and all related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and their respective officers, directors, shareholders, members, owners, partners, investors, potential investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents (collectively the "Released Parties"), and Plaintiff Ruel Haughton, on behalf of himself and all putative collective members (collectively "Plaintiffs"). Hereinafter, Plaintiffs and Defendant are referred to collectively as the "Parties" or individually as a "Party."

WHEREAS, on May 16, 2023, Plaintiffs filed a lawsuit against Defendant in the United States District Court for the Eastern District of Michigan, identified as *Ruel v. Marada Industries, Inc.,* Case No. 23-cv-11160 (the "Lawsuit"). The Lawsuit is assigned to the Honorable Jonathan J.C. Grey in the U.S. District Court for the Eastern District of Michigan (the "Court").

WHEREAS, in the Lawsuit, Plaintiffs allege that Defendant failed to pay proper overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

WHEREAS, Defendant expressly denies and continues to deny the allegations contained in Plaintiffs' Lawsuit or that it violated any federal, state or local law, breached any duty, failed to pay any employees as required by law, or engaged in any other unlawful conduct with respect to any of its employees. Nevertheless, Defendant desires to settle the Lawsuit finally on the terms and conditions set forth in this Agreement.

WHEREAS, on March 6, 2024, the Parties attended mediation with experienced mediator,

Michael Russell, Esq., and mutually and voluntarily agreed to a settlement of the Lawsuit as a collective action.

WHEREAS, the Parties have agreed to resolve the claims alleged in the Lawsuit by entering into this Agreement and by dismissing the Lawsuit with prejudice (as provided herein).

WHEREAS, the Parties were each represented by attorneys throughout the negotiations that culminated in the settlement and this Agreement, and said attorneys are experienced in handling collective actions arising under the FLSA.

WHEREAS, the Parties agree and acknowledge that this Agreement represents a fair and reasonable compromise of Plaintiffs' claims, which the Parties recognize would otherwise require extensive litigation to determine.

WHEREAS, the Parties agree that this Agreement is based upon the exchange of good and valuable consideration between them as set forth more fully herein, the adequacy or sufficiency of which is hereby acknowledged by all Parties.

NOW, THEREFORE, in sole consideration for the promises and covenants set forth herein, the Parties agree as follows:

A.     **Definitions**

1.     "Approval Order" means the order entered by the Court approving this Agreement.

2.     "Attorney's Fees and Costs" means the amount paid to Plaintiffs' counsel as attorneys' fees and litigation expenses.

3.     "Effective Date" means the date upon which this Agreement is fully executed by all Parties.

*Execution Copy*

4.      "Eligible Employee" means a putative collective member who is identified as an hourly employee who worked for Defendant during the Relevant Period and received a Great Catch bonus, attendance bonus, and/or quarterly bonus and who will receive an Individual Settlement Payment under this Agreement.

5.      "Excluded Employees" means those persons identified on **Exhibit C**, none of which will receive an Individual Settlement Payment nor will be subject to a release of claims.

6.      "Gross Settlement Amount" means the total amount of monies Defendant will pay to the Named Plaintiff, the Eligible Employees, and Plaintiffs' counsel.

7.      "Individual Settlement Payment" means the payment to each Participating Plaintiff via a settlement check pursuant to the terms of this Agreement and the Approval Order.

8.      "Net Settlement Amount" means the total amount of monies available to calculate Individual Settlement Payment after subtracting the Service Award and Plaintiffs' Attorney's Fees and Costs from the Gross Settlement Amount.

9.      "Participating Plaintiff" means an Eligible Employee who cashes or otherwise negotiates his or her Individual Settlement Payment and releases his or her claims against Defendant.

10.      "Relevant Period" means the period of time covered for purposes of calculating Individual Settlement Payments and also the period of time for which the release is applicable, which is May 13, 2020 through the date the Court enters the Approval Order, or May 1, 2024, whichever occurs first.

11.      "Service Award" means the amount paid to the Named Plaintiff, Ruel Haughton, in addition to any Individual Settlement Payment.

3

*Execution Copy*

12. "Settlement Administrator" means the third-party entity Plaintiff retains to perform the duties necessary to send the Settlement Notice and Individual Settlement Payments to each Eligible Employee.

13. "Settlement Notice" means the written notification that each Eligible Employee will receive which explains the settlement and their right to participate, a draft copy of which is attached as **Exhibit A**.

14. "Settlement Notice Packet" means the mailing the Settlement Administrator will send to each Eligible Employee containing the Settlement Notice and an Individual Settlement Payment.

## B.   Defendant's Payment Obligations

1.   <u>Gross Settlement Amount</u>.   In consideration for the dismissal with prejudice of the Lawsuit as well as the release of claims effected by this Agreement and other good and valuable consideration, Defendant shall pay a maximum of Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00) to settle the Lawsuit. Subject to the terms of this Agreement, the Gross Settlement Amount is inclusive of payment for: (a) all Eligible Employees, or their respective authorized legal representatives; (b) the Service Award and general release payment approved by the Court for the Named Plaintiff; (c) all Attorneys' Fees and Costs approved by the Court, including those in connection with securing Court approval of this Agreement, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Agreement; (d) the Participating Plaintiffs' share of applicable federal, state and local taxes required to be withheld by Defendant. The Gross Settlement Amount shall be the maximum amount that Defendant or the Released Parties (as defined below) are required to pay to settle the

Action and assumes 100% of the Eligible Employees cash or otherwise negotiate their checks and become Participating Plaintiffs.

2.      <u>Settlement Administrator and Employer's Withholdings</u>. Plaintiffs will also be responsible for the fees and costs incurred by the Settlement Administrator. Defendant will be responsible for payroll tax obligations and/or the employer's share of taxes for settlement purposes distributed to Participating Plaintiffs in addition to the Gross Settlement Amount.

**C.      <u>Timing of Payments</u>**

1.      By June 1, 2024, Defendant shall pay the Gross Settlement Amount to the Settlement Administrator. Within fourteen (14) days after receipt by the Settlement Administrator of the Gross Settlement Amount, the Settlement Administrator shall be authorized to pay:

      a.   any approved Service Award to the Named Plaintiff by First Class U.S. Mail; and

      b.   the Attorneys' Fees and Costs to Plaintiffs' counsel, Sommers Schwartz, P.C., via wire transfer.

**D.      <u>Settlement Administration</u>**

1.      <u>Selection of Settlement Administrator</u>. The Settlement Administrator shall be selected by Plaintiffs, subject to approval by Defendant, the selection of which shall not be unreasonably withheld.

2.      <u>Settlement Administrator Responsibilities</u>.   The Settlement Administrator shall be responsible for: (a) determining tax withholding amounts for the Eligible Employees, based on the Individual Settlement Payments; (b) preparing, printing, and disseminating to the Settlement Notice Packet by U.S. First Class Mail (including the Settlement Notice and the Individual

5

*Execution Copy*

Settlement Payments) and paying Service Awards and Attorney Fees and Costs as approved by the Court; (c) copying counsel for all Parties on material correspondence and promptly notifying Plaintiffs' counsel of any material requests or communications made by any Eligible Employees who receive the Settlement Notice; (d) withholding and paying all payroll tax obligations of Participating Plaintiffs in accordance and notifying Defendant of the employer's share of payroll tax obligations in accordance with this Agreement; (e) issuing W-2 and 1099 Forms, as applicable, for all amounts paid to Participating Plaintiffs, Named Plaintiff, and Plaintiffs' counsel; (f) ascertaining current address and addressee information for each Settlement Notice Packet returned as undeliverable or for which it receives notice that a mailed Settlement Notice Packet was otherwise not delivered; (g) referring to Plaintiffs' counsel all inquiries by the Eligible Employees which the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Administrator's duties specified herein; (h) responding to inquiries of the Plaintiffs' and Defendant's counsel; (i) promptly apprising counsel for the Parties of the activities of the Settlement Administrator; (j) maintaining adequate records of its activities, including the date of the mailing of the Settlement Notice Packets and receipt of negotiated checks, returned mail, and other communications and attempted written or electronic communications with the Eligible Employees; (k) confirming in writing to Plaintiffs' and Defendant's counsel its completion of the administration of the settlement and retaining copies of all endorsed settlement checks; (l) completing a declaration identifying all Eligible Employees, including the Named Plaintiff, who cash a Settlement Check, and providing a copy of the endorsed and deposited Settlement Check(s) to the counsel of the Parties, who may file same with the Court; (m) timely responding to communications from the Parties or their counsel; (n) issuing unclaimed (retained)

6

funds to the Defendant under the terms of this Agreement; and (o) such other tasks as the Parties mutually agree.

3.    Reporting by Settlement Claims Administrator.    Throughout the 90-day administration period, the Settlement Administrator will provide reports to the Parties, upon request by either Party, the status of the distribution of the Settlement Notice Packets to Eligible Employees, the receipt by the Settlement Administrator of endorsed settlement checks, or a report on any other aspect of the claims administration process.

**E.    Creation and Implementation of a Qualified Settlement Fund**

1.    Establishing the Qualified Settlement Fund.    Funds paid by Defendant pursuant to this agreement shall be deposited in an account established by the Settlement Administrator (the "Qualified Settlement Fund"), which shall be a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq.   The Qualified Settlement Fund shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

2.    Administering the Qualified Settlement Fund.    The Settlement Administrator shall serve as Trustee of the Qualified Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Qualified Settlement Fund, including the handling of tax-related issues and payments. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

3.    Tax Withholding and Reporting.    The Settlement Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes from the wage payments of each Participating Plaintiff. The

7

*Execution Copy*

Settlement Administrator shall also be responsible for calculating and timely notifying Defendant of the employer's share of payroll taxes or contributions (*i.e.* FICA, FUTA, SUTA, and Medicare) relating to the wage payments of each Named Plaintiff and Participating Plaintiff, which will be paid separately to the Settlement Administrator by Defendant. Subject to the Settlement Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as liquidated damages or interest shall not be subject to withholding and shall be reported to the IRS on Form 1099 by the Settlement Administrator.

4.      Communication with Counsel.   Defendant's counsel and Plaintiffs' counsel are authorized to communicate directly with the Settlement Administrator to expedite the settlement administration process.

## F.      Allocation of the Gross Settlement Amount

1.      Net Settlement Amount.   The amounts approved by the Court for a Service Award and Attorney's Fees and Costs shall be deducted from the Gross Settlement Amount to determine the amount of the Net Settlement Amount.

2.      Allocation of Net Settlement Amount.  All Eligible Employees shall be paid a portion of the Net Settlement Amount pursuant to a formula which will generally differ based on Defendant's payroll data during the Relevant Period. For the purpose of informing Eligible Employees of their Individual Settlement Payment, the estimated respective Individual Settlement Payment for each Eligible Employee shall be disclosed to each Eligible Employee in the Settlement Notice Packet. The Excluded Employees will not receive any portion of the Net Settlement Amount. The schedule of Individual Settlement Payments to be sent to Eligible Employees is attached as **Exhibit B**.

*Execution Copy*

3.      <u>Service Award.</u>   From the Gross Settlement Amount, Plaintiffs' Counsel shall seek a Service Award of Two Thousand Five Hundred Dollars ($2,500.00) for Ruel Haughton for a general release of all her claims against Defendant, for her involvement in commencing and discovering the claims represented in this Lawsuit, and for her involvement in settlement negotiations for the benefit of all Eligible Employees. Defendant does not dispute, based on its review of all relevant factors, that the Service Award sought by the Named Plaintiff is reasonable. Any Service Award approved by the Court shall be deemed non-wage compensation in its entirety for Named Plaintiff and shall be reported on an IRS Form 1099. Any amount of the requested Service Award not approved by the Court shall be included as part of the Net Settlement Amount.

4.      <u>Attorneys' Fees and Costs.</u>   Plaintiffs' Counsel shall receive 33 and 1/3% of the Gross Settlement Amount, Eighty-Three Thousand Three Hundred and Thirty-Three Dollars and 33/100 ($83,333.33) as an award of attorneys' fees, plus reimbursement of litigation expenses not to exceed $16,000, plus settlement administration expenses not to exceed $10,000. Defendant does not dispute that this amount of fees and costs sought by Plaintiffs is reasonable. Payment of such attorneys' fees and costs to Plaintiffs' counsel shall be made in accordance with this Agreement and shall constitute full satisfaction of any and all obligations by Defendant to pay any person, attorney, expert, law firm for attorneys' fees or costs incurred on behalf of the Named Plaintiff and Participating Plaintiffs. The payment of Attorney Fees and Costs shall be reported to Plaintiffs' counsel on an IRS Form 1099. Any amount of the Attorney's Fees and Costs not approved by the Court shall be included as part of the Net Settlement Amount.

**G.      <u>Payments to Eligible Employees</u>**

9

*Execution Copy*

1.      <u>Timing of Payments.</u>   Within twenty-one (21) days of the payment by Defendant of the Gross Settlement Amount, the Settlement Administrator will transmit all Settlement Notice Packets to Eligible Employees via First Class U.S. Mail to the last known address for each Eligible Employee, or such other address provided by the Eligible Employee to the Settlement Administrator.

2.      <u>Tax Treatment of the Settlement Payments.</u>   The settlement payments attributed to the Eligible Employees shall be allocated 50 percent (50%) to back wages and 50 percent (50%) to liquidated damages. The back wages shall be subject to all required employee-paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state or local-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.). The liquidated damages shall be treated as non-wage income to the Eligible Employees.  The Settlement Administrator shall report the back wage payments to the Internal Revenue Service ("IRS") on IRS Form W-2 and shall report the liquidated damages on IRS Form 1099.

3.      <u>Tax Responsibilities, Tax Advice, and Indemnification.</u>   Other than the withholding and reporting requirements set forth herein, the Participating Plaintiffs shall be solely responsible for any necessary reporting of their respective shares of any federal, state, and/or local income or other tax, if any, on the settlement payments. Named Plaintiff agrees and acknowledges that she has not relied upon any advice from Defendant's or Plaintiffs' counsel as to the taxability of the payments received pursuant to this Agreement. As to the payments treated and reported as non-wages, Named Plaintiff agrees to hold Defendant harmless for any tax due or owing by him on such payments.

*Execution Copy*

4.      <u>Negotiation of Settlement Checks and Retention</u>.   The negotiating of a settlement check by any Participating Plaintiff provides sufficient consideration for his or her release of claims. Eligible Employees will have ninety (90) Days after the Settlement Notice Packets are mailed in which to deposit or otherwise negotiate their settlement checks. However, settlement checks not cashed or negotiated within ninety (90) days may be reissued once if the Parties mutually agree, or if the Settlement Administrator determines that there is good cause to do so with respect to a particular settlement check(s). If an Eligible Employee does not negotiate his or her settlement check within ninety (90) days of issuance, or thirty (30) days after reissuance, whichever is later, the funds related to the Eligible Employee's settlement payment will be designated as "Unclaimed Funds."

Any funds remaining in the Net Settlement Amount after payment to: (a) Participating Plaintiffs; (b) the Service Award to Named Plaintiff approved by the Court; (c) the Attorney's Fees and Costs to Plaintiffs' Counsel; and (d) applicable withheld federal, state and local income taxes withheld from payments to the Participating Plaintiffs, shall be designated as "Unclaimed Funds." All Unclaimed Funds shall be returned to the Defendant within thirty (30) days following the date they are finally determined to be Unclaimed Funds by the Settlement Administrator.

**H.    <u>Release of Claims</u>**

1.      <u>Specific Release by Plaintiffs</u>. Conditioned upon the entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, Named Plaintiff hereby agrees to dismiss the Lawsuit with prejudice, and he and all Participating Plaintiffs will release Defendant, including any and all of Defendant's predecessors, related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and their

respective officers, directors, shareholders, members, owners, partners, investors, potential investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents (collectively the "Released Parties") from any and all federal, state, and local wage-and-hour claims of any nature whatsoever that accrued during their employment with Defendant, known or unknown, including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs. The release of claims applies from May 13, 2020, through the date the Court approves the Settlement or May 1, 2024, whichever occurs first. Plaintiffs also knowingly and voluntarily waive their rights, if any, to recover and/or receive any additional damages or other relief for any claim brought by the Department of Labor and/or any state or local agency on their behalf under all federal, state, and local laws which relate to the claims covered by this Agreement. Notwithstanding the foregoing, nothing in this Agreement is intended to operate as, nor shall be construed as, a release or waiver of any rights and/or claims that cannot be released or waived as a matter of law. This release also shall not limit Plaintiffs' ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency as required by law.

2.     Release by Named Plaintiff: Ruel Haughton, individually, on behalf of herself as well as all heirs, and assignees, in addition to the release provided for under paragraph H(1), does release and discharge the Defendant and all Released Parties of and from any all claims, of any nature whatsoever that accrued during their employment with Defendant, known or unknown, that she has or may have against any Released Party. The release o from the beginning of time until

*Execution Copy*

the date of her the execution of this Settlement Agreement. The release provide for under this paragraph is a general release of claims and shall be interpreted as broadly as the law permits.

3. <u>Release Language on Settlement Checks</u>.  Each Individual Settlement Payment issued to Eligible Employees will contain the following release language on the back of the check:

> I knowingly and voluntarily release, waive, and discharge Marada Industries, Inc., and all other Released Parties, from any and all federal, state, and local wage-and-hour claims of any nature whatsoever that accrued during my employment working at Marada Industries, Inc. between May 13, 2020 through [the date of entry the of the Approval Order or May 1, 2024, whichever occurs first], including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs.

By negotiating the settlement check, all Participating Plaintiffs are fully bound by the release described in this Agreement.

4. <u>No Admission of Liability and Non-Admissibility</u>. By entering into this Agreement, Plaintiffs understand that Defendant does not admit, and specifically denies, any liability or wrongdoing as alleged in the Lawsuit, and that Defendant is entering into this Agreement solely for the purposes of avoiding costs of litigation and amicably resolving all disputes and causes of action brought by Plaintiffs against Defendant. This Agreement does not constitute an admission by Defendant or by any Released Party of any violation of any federal, state, local or common law or statute. In addition, this Agreement does not constitute an admission by Defendant or any Released Party of any violation of any contract or other legal duty. Neither this Agreement nor anything in this Agreement shall be construed to be admissible, or shall be admissible, in any proceeding as evidence of wrongdoing by Defendant or any Released Party.

5. <u>No Publicity</u>. The parties agree that, neither Plaintiffs, Defendants, or their counsel shall: (a) publicize the terms of this Agreement to any person, newspaper, magazine, radio or

13

television station, website, Internet site, blog site or in any other manner; and/or (b) advise any present or former employees of any Released Parties of this settlement or any of the terms hereof, except as required by law, necessary for settlement administration, or as provided for by this Agreement. If it is established that a party has or their counsel has breached or caused any breach of the covenant of non-publicity, the breaching party shall be liable for all damages caused by such a breach , including attorney fees. Notwithstanding the forgoing, nothing in this paragraph shall be read to impact the administration of the settlement called for under Section D of this agreement.

## I.    Dismissal of Lawsuit

1.    <u>Stipulated Approval Order</u>. Within fourteen (14) days of the Effective Date, the Parties will submit to the Court a stipulated order for approval of this Agreement. If the Court does not enter the stipulated order within fourteen (14) days, Plaintiffs agree to prepare and file a joint motion to approve this Agreement on or before April 30, 2024. If for any reason the Court will not approve this Agreement as drafted, the Parties agree to work together in good faith to reform this Agreement as necessary in order for it to be approved by the Court. To the extent the Court will not approve this Agreement, and the Parties are unable to reform the Agreement in spite of their good-faith efforts to do so, this Agreement shall be null and void.

2.    <u>Stipulated Order of Dismissal</u>. Upon the Court entering its Approval Order the Parties will sign and submit a stipulated order dismissing the Lawsuit with prejudice (if necessary).

## J.    Miscellaneous

1.    The Parties agree that this Agreement is enforceable in a court of law. The Parties acknowledge that this Agreement constitutes a complete accord with respect to all claims,

*Execution Copy*

demands, or causes of action that have been released by this Agreement and that the Parties' sole remedy for breach of this Agreement is specific enforcement of its terms.

2.      If any court shall determine that any provision herein is unenforceable, the Parties agree that any such provision, or part thereof, shall be reformed and construed consistent with the apparent purpose of the provision in order to avoid its unenforceability or, in the event that reformation is not possible, the provision shall be severed and all remaining provisions shall remain in full force and effect.

3.      Named Plaintiff wholly relies upon her own judgment in executing this Agreement. Named Plaintiff has had an opportunity to consult attorneys and understand that if she went forward with a claim, she could have a better result than that achieved here, the same result as achieved here, or a worse result than that achieved here. Named Plaintiff has carefully read this Agreement in its entirety and voluntarily and willingly signs the same as a free act.

4.      The Parties agree that this Agreement is to be construed in accordance with the laws of the State of Michigan.

5.      This Agreement may be executed in counterparts and by facsimile or scanned document, each of which shall be considered equally authentic and together shall be deemed to be one in the same document.

6.      The Parties acknowledge that the promises and covenants contained in this Agreement are the sole and total agreement of the Parties with respect to the matters set forth herein; that there are no covenants, promises, agreements or representations with respect to the matters set forth herein other than as contained in this Agreement; and that in accepting the terms of this Agreement, Named Plaintiff has not relied upon any promises, covenants, agreements or

*Execution Copy*

representations with respect to the matters set forth herein other than as expressed in this Agreement.

7.      The Parties agree that the terms of this Agreement cannot be changed, altered, modified, amended, or added to except in a writing that specifically refers to this Agreement and is signed by the Parties. The Parties expressly waive application of any local, state, federal, or foreign law, statute or judicial decision allowing verbal modifications, amendments, or additions to a contract notwithstanding an express provision requiring a writing signed by the Parties.

8.      This Agreement shall be inadmissible as evidence in any proceeding, except in an action or proceeding to approve, interpret, or enforce its terms.

9.      **THE PARTIES CERTIFY THAT THEY HAVE READ ALL OF THIS SETTLEMENT AGREEMENT AND FULLY UNDERSTAND ALL OF THE TERMS USED AND THEIR SIGNIFICANCE AND HAVE SIGNED THIS SETTLEMENT AGREEMENT VOLUNTARILY.**

DocuSigned by:

_____                          4/15/2024
Ruel Haughton, Named Plaintiff                               _____
                                                             Date

Marada Industries, Inc.
Defendant

_____                          4/23/2024
                                                             _____
By: _____                                  Date

Its: _____

4877-5346-5526, v. 1

16

*Execution Copy*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| RUEL HAUGHTON, individually and on behalf of all others similarly situated, | : : : | |
| | : | Case No: 2:23-cv-11160-JJCG-KGA |
| Plaintiff, | : : | |
| v. | : : | Hon. Jonathan J.C. Grey |
| | : | Mag. Kimberly G. Altman |
| MARADA INDUSTRIES, INC., d/b/a COSMA BODY ASSEMBLY MICHIGAN, a Michigan corporation, | : : : : | |
| Defendant. | : : | |

**NOTICE OF SETTLEMENT**

**A federal court authorized this notice.  This is not a solicitation from a lawyer.**

| 1. | Introduction |
|---|---|

- This Settlement Notice is to inform you about a lawsuit in which you are eligible to receive a payment under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, to advise how your rights may be affected by participating in the settlement, and to instruct you on the procedure for participating in this settlement, if you so choose.

- Plaintiff, Ruel Haughton ("Plaintiff"), filed this action against Defendant, Marada Industries, Inc. (hereinafter, "Defendant") on behalf of himself and all other current and former hourly employees who worked for Defendant between May 13, 2020 to [date of approval or May 1, 2024, whichever is sooner].

- Plaintiff alleges that Defendant engaged in unlawful pay practices which amounted to failure to pay overtime in violation of the FLSA.

- Defendant expressly denies Plaintiff's allegations in their entirety and assert that at all relevant times they have paid their employees properly. By entering into the settlement, Defendant do not admit any liability or wrongdoing.

- The settlement is the result of good-faith, arms-length negotiations between the Plaintiff and the Defendant, through their respective attorneys with the assistance of a third-party

1

mediator. Both sides agree that, considering the risks and expense associated with continued litigation, this Settlement is fair and reasonable under the circumstances.

- As part of the settlement, Defendant will pay a gross amount of $250,000 to be allocated among you and other eligible employees.  The process of how the settlement amount is being distributed to you and other eligible employees is set forth below in section 2. The Court has entered an Order approving the parties' settlement agreement (the "Agreement"), including these payments (the "Approval Order"). You are receiving this Notice because you are eligible to participate in the settlement and to receive payment from the settlement.

- **Enclosed is a check for your share of the settlement.** Pursuant to the Court's Approval Order, all eligible employees who consent to join the lawsuit (referred to hereinafter as "Participating Plaintiffs") will release certain claims against Defendant, as described in Section 7, below. You have 90 days to cash, deposit, or otherwise negotiate this check, and, if you do so, you will be bound by the terms of the Agreement and have released your legal claims.

- The Court in charge of the case is the United States District Court for the Eastern District of Michigan, identified as *Ruel Haughton v. Marada Industries, Inc.*, Case No. 23-cv-11160.

### 2.        How is the settlement being allocated?

The total settlement amount of $250,000 was approved by the Court and is being allocated as follows:

(a)    At least $138,166.67 will be paid to Eligible Employees. This amount will be divided among the Eligible Employees, including you, pursuant to the allocation formula contained in Section 3.

(b)    $2,500 for the Named Plaintiff, which compensates him for a general release of all his claims, along with the time spent and the risk incurred in representing you in this litigation.

(c)    $83,333.33 for attorneys' fees.  The attorneys' fees compensate your attorneys for the time they spent litigating the case, during which they have not been paid for this work.

(d)    Reimbursement of litigation costs not to exceed $26,000. The litigation costs reimburse your attorneys for the amounts they have paid to litigate the case, such as costs for discovery, experts, mailings, filing fees, settlement administration, etc.

### 3.        How was my Individual Settlement Payment calculated?

Each Eligible Employee's Individual Settlement Payment was calculated from Defendant's payroll data and represents the amount of alleged unpaid overtime Plaintiff claims you should have received from Defendant during the period of May 13, 2020 through February 9, 2024, plus an additional amount for liquidated (double) damages. Each Eligible Employee's Individual Settlement Payment will be allocated from the settlement based on the same formula.

The amount of all checks representing Individual Settlement Payments which are not timely negotiated/cashed shall returned to Defendant, and the Settlement Administrator shall seek reimbursement from the appropriate taxing authorities of all employer payroll taxes paid on such Individual Settlement Payments.

Your Individual Settlement Payment is: $_____ less applicable payroll taxes.

The parties agreed that, for tax purposes, each Individual Settlement Payment will be allocated fifty percent (50%) each to: (1) wages (to be reported on an IRS Form W-2); and (2) statutory liquidated damages (to be reported on an IRS Form 1099). Participating Plaintiffs will be responsible for the tax consequences of all payments received by them, for filing returns and reporting all income received to state and federal taxing authorities, and for payment of any other applicable taxes due. Counsel for the Parties cannot provide and will not provide any advice regarding your tax obligations. You should seek tax advice as to any amounts you receive pursuant to the settlement from your own tax advisor.

You have ninety (90) calendar days after the issuance of your settlement check to cash, deposit, or otherwise negotiate the settlement check. After that time, the amount of any uncashed settlement checks will be returned to Defendant and you will not receive a payment as a result of the settlement.

**4.      Where can I get more information?**

You can get more information by contacting the attorneys representing Plaintiffs at:

> Jesse L. Young, Esq.
> Sommers Schwartz, P.C.
> One Towne Square, 17th Floor
> Southfield, Michigan 48076
> jyoung@sommerspc.com

**5.      How did I get involved?**

On May 16, 2023, the Named Plaintiff filed this lawsuit as a collective action. On XXXX, the Court approved the Parties' settlement of the lawsuit as an FLSA collective action and authorized the Plaintiff to issue this Settlement Notice to you and others, giving Participating Plaintiffs ninety (90) calendar days to cash their checks and join the settlement as Participating Plaintiffs. By cashing the settlement check, you consent to join the lawsuit and the settlement as a Participating Plaintiff.

3

**6.      Why is there a settlement?**

The Court did not decide in favor of Plaintiff or Defendant. Instead, both sides agreed to a settlement without Defendant's admission of liability, which brings the litigation to an end. That way, Plaintiff and Defendant avoid the cost, delay, and uncertainty of moving forward in litigation to trial and possible appeals, and the Participating Plaintiffs will receive compensation.

**7.      What legal claims will I release if I participate in the settlement?**

Under the settlement, if you cash your check, you cannot sue again or be part of any other lawsuit against Defendant about the same legal issues in this case.  It also means that all the Court's orders will apply to you and legally bind you. The Court has approved the settlement reached in this case, and under the terms of the settlement, all Participating Plaintiffs will be bound by the Release.  As set forth in the Agreement:

### Released Claims

"Released Claims" means and refers to any and all federal, state, and local wage-and-hour claims of any nature whatsoever that accrued during your employment with them during the period of May 13, 2020 through [Date of Entry of Approval Order or May 1, 2024, whichever is sooner], including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs.

### Released Parties

"Released Parties" means and refers to Defendant and its predecessors, related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and their respective officers, directors, shareholders, members, owners, partners, investors, potential investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents.

### Release Period

"Release Period" means and refers to the period from May 13, 2020 through [Date of Entry of Approval Order or May 1, 2024, whichever is sooner].

*      *      *

**Please do not call the Court or the Court clerk's office to inquire about this settlement. They will be unable to help you.**

4